## HOPKINS *et al.* v. CITY COMMISSION OF WAYCROSS.

1. Under the charter of the City of Waycross (Acts 1923, p. 837), the limit of taxation in the City of Waycross for school purposes was fixed at ten mills, instead of six mills. But the act also provided that it should be submitted to the qualified voters of the city for their approval or rejection at a special election to be held for that purpose. The managers of the special election were to make returns to the commission of the City of Waycross, whose duty it should be "to declare the result," as appeared from the returns, and record the same in the book of their proceedings; and if two thirds of those voting at said election, as provided in the constitution of Georgia, should be in favor of the increased taxation, then the act should become operative, etc.

2. Where a special election was held in the City of Waycross in pursuance of the act just mentioned, and after the polls were closed the managers at each precinct counted the votes and certified the result to the city commission, who deposited the same with the city clerk; and where it appeared from the agreed statement of facts that 1257 votes were cast at such election "for increased taxation for public-school purposes," and that 636 votes were cast in the election "against increased taxation for public-school purposes," less than two thirds of those voting in the election voting for increased taxation; and where the city commission did not declare the result, but permitted some of the election managers, and others not managers, to open the ballot-boxes and recount the ballots and certify to a different result, such action on the part of the city commission was unauthorized by the charter of the city.

3. Mandamus is an available remedy to compel a due performance of

their duty by the city commission in the circumstances set out in the foregoing notes.

4. The court below erred in refusing to make the mandamus absolute.

No. 4483. April 15, 1925.

Petition for mandamus. Before Judge Summerall. Ware superior court. July 14, 1924.

John T. Hopkins and others brought a petition in their own behalf and in behalf of such others similarly situated as might see fit to join herein, against the City Commission of the City of Waycross and each member thereof, praying for a mandamus requiring the defendants to consolidate the returns of certain election managers and declare the result of the election "against increased taxation for public-school purposes." The petition alleged in substance the following: The governmental affairs of the City of Waycross are by law vested in a city commission composed of five commissioners and a city manager; the personnel of the city commission was duly named in the petition. The plaintiffs are citizens and taxpayers of the City of Waycross. The legislature of Georgia passed an act approved August 14, 1923 (Acts 1923, p. 837), by which the limit of taxation in the City of Waycross for school purposes was fixed at ten mills instead of six mills as provided in the act of October 22, 1887, creating a public-school system for said city, as amended. Section 3 of the act of August 14, 1923, provides that "this act shall be submitted to the qualified voters of the City of Waycross for their approval; for which purpose the City Commission of the City of Waycross shall order a special election to be held on some date to be designated by said commission in a resolution or ordinance of the commission of the City of Waycross, which said resolution or ordinance shall set forth the rate of taxation now in force and the rate of the proposed increase, the date of the proposed election, and the rules and regulations governing same and the qualification of voters. Notice of such election shall be published in a newspaper in said City of Waycross at least once a week for two weeks before the election. At said election those in favor of the approval of this act shall have written or printed on their tickets: 'for increased taxation for public school purposes,' and those against this act and of the approval of the same shall have written or printed on their tickets: 'against increased taxation for public school purposes.' The man-

agers of said special election shall make return to the commission of the City of Waycross, whose duty it shall be, at their first regular meeting thereafter, to open the same, to declare the result, and record the same in the book of their proceedings; and if two thirds of those voting at said election, as provided in the constitution of Georgia, shall be in favor of the increased taxation, then this act shall become operative, and said commission of the City of Waycross and the board of education of the City of Waycross shall proceed to carry out their respective duties under same. Should this act as amended fail of adoption, said commission of the City of Waycross shall submit the same to another election after the lapse of twelve months from the first election."

The city commission, at a regular meeting held on August 21, 1923, adopted and passed a resolution ordering a special election to be held in the City of Waycross on Wednesday, October 31, 1923, for the purpose of determining whether or not the limit of taxation in said city for public-school purposes should be increased to ten mills as fixed by the act of August 14, 1923. On September 25, 1923, at a meeting of the city commission the date for holding the special election was changed by the commission from October 31 to November 7, 1923, on which date the election was held, and at said election 1261 of the voters of said city, voting therein, voted for increased taxation for public-school purposes, and 636 of the voters voted against increased taxation for public-school purposes. Therefore, it is alleged, the act of August 14, 1923, failed of adoption, because two thirds of those voting in the election did not vote for increased taxation as fixed by the act. After the polls were closed and the election managers at each voting precinct had counted the votes, they signed a certificate stating the number of votes each side of the question received, and such certificate, with one tally-sheet and one list of voters with the names of the managers endorsed thereon, was delivered by the managers at each precinct to the city clerk, who kept them and returned them to the next regular meeting of the city commission. The managers of the several precincts did not seal one list of the voters, one tally-sheet, and all ballots at each precinct, and return them to the ordinary of Ware County with their names endorsed on the package containing the same, as required by section 9 of the act of 1909 (Acts 1909, p. 1456), creating and establishing a new

charter for the City of Waycross. On the contrary, the managers at each voting precinct returned the ballots, together with a copy of the voters' list and one tally-sheet, to the office of the city clerk, where they were kept for an indefinite length of time without authority of law. On November 20, 1923, the commission, instead of consolidating the returns of the managers at the various precincts, each of which contained the certificate of the managers showing the number of votes each side of the question received, one tally-sheet, and one list of the voters at each precinct with the names of the managers endorsed thereon, and declaring the result of the election accordingly, illegally permitted certain of the election managers, and others who had nothing whatever to do with holding the election, to recount the ballots which had been illegally kept at the office of the city clerk from the date of the election to the time of the meeting, and upon a recount they determined that at said election 1283 of the voters of said city voting in said election voted "for increased taxation for public-school purposes," and that only 616 of the voters voting therein voted "against increased taxation for public-school purposes." Accordingly, they declared the result in favor of increased taxation. It is alleged that the election managers had no right or authority to return the ballots to the city clerk or deposit them in his office, and the city commission had no authority to permit a recount of the ballots before declaring the result of the election. It was the duty of the commission, in declaring the result of the election, to consolidate the returns of the managers at the various precincts, and to look only to the certificates showing the number of votes each side of the question voted on received, and to sign tally-sheets and voters' lists returned therewith, and to declare the result in accordance with said returns. Inasmuch as the returns of the managers have not been consolidated and the result of the election has not been legally declared, plaintiffs as citizens and taxpayers are, as matter of law, entitled to have the result thereof declared by the commission to be against increased taxation for public-school purposes, in accordance with the returns of the election managers to the city clerk, now of file in his office.

The defendants demurred and answered. The demurrer, which was general, was not expressly ruled upon. The answer admitted some paragraphs of the petition and denied others, and specifically

averred, among other things, that the city clerk held the election papers as custodian for the managers, as they could not be returned to the city commission until the next regular meeting after the election; that it was not proper or necessary for the managers to return the list of voters, tally-sheet, and ballots to the ordinary of Ware County until after the declaration of the result of the election and the consolidation thereof by the city commission; that the act of 1900 was complied with after the consolidation by the city commission; that upon a timely and proper request for a recount of the votes being made, each voting precinct being represented by one or more of the managers thereat, the votes were recounted by the managers present with the result that 1283 votes were found to be in favor of increased taxation for public-school purposes and only 616 votes against such increased taxation, which result was duly and properly reported to the city commission in its first regular meeting after the election, and declared by it in a resolution then and there adopted to be the result of the election. It is averred that there was nothing illegal in this recount of the votes, and that the result shown thereby was the true result of said election.

The case was submitted to the trial judge for determination without the intervention of a jury, upon an agreed statement of facts, which was as follows:

"The managers who served at the millage election in the City of Waycross on November 7, 1923, were as follows: at the courthouse precinct, M. W. Lott, L. K. Shipes, and W. N. Smith; at the city hall precinct, T. S. Paschall, W. J. Pamphlin, and C. E. Dunn; at the Old Nine precinct, Harry Joyner, E. H. Myers, and J. W. Booth; at one of the voting places at King Brothers' Garage, W. W. Sharpe Sr., E. R. Bennett, and A. H. Stallings; and at the other voting precinct at King Brothers' Garage, C. M. Sweat, G. R. King, and E. N. Gerald. On the evening of November 7, 1923 (the day the election in question was held), and after the votes were counted by the managers at the respective precincts, all of the managers met at the city hall, and certificates of the result were made up and signed by the managers at the respective voting places. In these certificates the voting at the respective precincts was shown as made by that count, and the certificates, together with a list of the voters and the original tally-sheets as

made by the managers and the ballots cast, were all sealed in the ballot-boxes by the managers and locked, and in that manner delivered to Walter E. Lee, Esq., city clerk. At the time the ballot-boxes and the papers aforesaid were delivered to the clerk in the manner stated, he was requested to safely keep them in his vault until the next regular meeting of the city commission. The certificate of the managers at the city hall precinct showed a vote of 502 for increased taxation for public-school purposes and a vote of 161 against increased taxation for public-school purposes. The certificate of the managers at the court-house precinct showed a vote of 202 for increased taxation and 140 against increased taxation. The certificate of the managers at the Old Nine precinct showed a vote of 44 for increased taxation and 125 against increased taxation. The certificate of the managers at one of the voting places at King Brothers' Garage showed a vote of 260 for increased taxation and 106 against increased taxation; and at the other voting place at King Brothers' Garage the certificate showed a vote of 249 for and 104 against increased taxation.

"On the night of the election and after the result had been made public by the managers, Dr. J. L. Walker made some sort of a request for a recount of the votes, it appearing at that time that increased taxation had lost by four votes, and, after the ballot-boxes containing all the election papers had been turned over to the clerk as stated, they were put in the vault at the city hall, where they were kept under lock and key until the next regular meeting of the city commission on November 20, 1923. Prior to that meeting the clerk notified the different election managers to be present for the purpose of reporting to the commission and consolidating the vote. Several of the managers appeared at the meeting on November 20, and after routine business had been disposed of by the commission, and when the consolidation of the votes cast in the millage election was reached, Dr. Walker renewed his request for a recount of the votes in said election, stating that increased millage lost by only four votes, and, since there were over 1900 votes cast, it would be easy for a mistake to have occurred. Dr. Walker was at that time a member of the city commission. After his request for a recount, the mayor, who was presiding, called on Mr. D. M. Parker, city attorney, for an opinion as to whether or not a recount would be legal and in

order, and the city attorney advised, in substance, that in his opinion it was a matter for the managers themselves to determine; that the request could come from a member of the public or a member of the commission or the commission itself, but that there was no law compelling a recount, and if the managers declined to grant it there was nothing further to be done, but it was a matter solely up to them to determine whether or not they would grant the request for a recount. After that statement by the city attorney, Mr. Steffens, who was a manager at one of the voting precincts, arose in the hall where the commission and the public were assembled, and moved that a recount of the votes by the managers be made. Thereupon Mr. L. J. Smith, who was a member of the commission, made a motion that the election managers be requested to recount the votes, and this motion was seconded by commissioner Taylor, and carried. Then, without a vote one way or the other by the managers present, they acceded to the request and immediately called on the clerk for the ballot-boxes. The clerk, assisted by some of the managers, went to the vault and got the ballot-boxes, which were brought into the presence of the city commission and managers assembled in the city hall; and seals were there broken, and one or more boxes had to be opened with a hammer, because the keys had been lost and they could not be gotten into in the usual way. They were opened, however, in the presence of the managers who were present and the commission, and the recount made. No objection to the recount was made by any manager present.

"W. N. Smith, one of the men who served as manager at the court-house precinct, was not present at the recount, and W. M. Lott and L. K. Shipes, two of the managers who served at that precinct, took charge of the ballot-boxes they kept on the day of the election, and by their request D. M. Parker, who was not an official manager at any precinct, assisted them in recounting the ballots contained in that box. He assisted by keeping the tally-sheet, but did not handle the ballots. He was not sworn in as a manager, and had nothing to do with the holding of the election. The only assistance rendered by him was to keep the tally-sheet and record the number of ballots as they were counted by Mr. Lott and Mr. Shipes. Upon the recount that box showed a vote of 208 for increased taxation and 134 against increased taxa-

tion, and after the recount the managers assisted by Mr. Parker changed the original certificate so as to show that 208 instead of 202 voted for increased taxation, and that 134 instead of 140 voted against increased taxation. The tally-sheet showing the recount was signed by the two managers, and D. M. Parker who assisted them, and was attached to the certificate and the tally-sheet kept by the managers on the day of the election.

"The votes cast at the Old Nine precinct were recounted by Harry Joyner, E. H. Myers, and J. W. Booth, the persons who acted as managers at the election for that precinct, and the recount showed no change in the vote. The vote at one of the voting places at King Brothers' Garage was recounted by W. W. Sharpe Sr., and H. A. Stallings, two of the election managers, assisted by H. C. Bunn, who was requested by them to assist in the recount. Mr. Bunn was not sworn in as a manager and had nothing to do with the holding of the election. The vote from that precinct was not changed by the recount. The votes cast at the other polling place at King Brothers' Garage were recounted by G. R. King, one of the managers who acted on the day of the election, assisted by J. S. Elkins, who was an election manager but not at that particular precinct, and by Herbert W. Wilson, who was requested by them to assist in the recount, but who was not sworn in as a manager and had taken no part in holding the election on November 7th. The result of the recount showed the same as the original count by the managers on the day of the election, so far as the vote for increased taxation was concerned, but there was a difference of one vote against increased taxation; the vote as shown by the recount being 103 against increased taxation instead of 104 as shown by the original count. At the conclusion of the recount of the votes cast at that polling place, the certificate made by the managers on the day of the election was changed from 104 against increased taxation to 103 against increased taxation. The tally-sheet showing the change of one vote in this precinct was signed by Messrs. Elkins, King, and Wilson, and attached to the original tally-sheet and amended certificate.

"The votes cast at the city hall precinct were recounted by T. S. Paschall, one of the managers in the election at that precinct, assisted by A. H. Steffens, a manager who served at another pre-

cinct on the day of the election, and by W. E. Sirmans. Mr.
Steffens and Mr. Sirmans assisted Paschall at his request. W. E.
Sirmans was not sworn in as a manager and had nothing to do
with the holding of the election. The recount of the vote in that
precinct showed 518 for increased taxation and 148 against in-
creased taxation, instead of 502 for and 161 against increased taxa-
tion, as appeared from the first count. At the conclusion of the
recount, Mr. Steffens and Mr. Sirmans made the following certif-
icate: 'We, the undersigned, do hereby state that in the recount
of votes for millage we find the following votes were cast for, 518,
against 148, total 666,' signed T. S. Paschall, A. H. Steffens, and
W. E. Sirmans, and to this they also attached the original list of
voters at the city hall precinct.

"After the recount of the ballots in the manner stated, the com-
mission, upon motion duly seconded, adopted a resolution declaring
the result of the election for increased taxation for public-school
purposes. A copy of said resolution is as follows: 'Georgia, Ware
County. Whereas an election was held in and for and by the
City of Waycross, on November 7th, 1923, under the act of 1923,
to determine whether there shall be an increase in taxation for
public-school purposes in the City of Waycross, and whereas, at
this the next regular meeting of the commission in and for said
City of Waycross, and before the consolidation of the vote of said
election, the managers in said election, upon request of the said
commission, have recounted the vote cast in said election, said re-
count having been made at this time and in the presence of said
commission, and whereas, upon such recount of the said votes
cast in said election, it appears that the vote in favor of increased
taxation was and is 1283 votes, and appears that the vote against
said increased taxation was and is 616 votes, and whereas the total
vote in said election was 1899, and it appears that more than two
thirds of said total vote was in favor of increased taxation, as
required by law: Now be it resolved by the said commission in
and for said City of Waycross, in regular meeting assembled, that
the result of said election is hereby declared to be for and in favor
of said increased taxation, and by the required majority of votes
above two thirds of those voting of seventeen votes.' This resolu-
tion was dated November 20, 1924, and signed by L. J. Smith,
W. N. Taylor, and J. L. Walker as commissioners, and was at-

15

tested by W. E. Lee, city clerk, and also signed by H. A. Stallings, G. R. King, and M. W. Lott, three of the election managers. To the resolution was attached the following memorandum: 'Seconded by Commissioner Smith, and carried, Mayor Cowart voting No. There being no further business, the meeting adjourned.'

"It was further agreed that Mayor Cowart, who was presiding over the meeting of the commissioners, objected to the recount and voted against the adoption of the resolution and refused to sign it. That after the recount was made in the manner stated; and the different certificates amended and changed, and a new one made in one instance, they were all turned over by the managers and those assisting them in the recount, to the clerk, and were attached to the tally-sheets, as stated, all of which were also signed, and to the list of voters, and then they were by the clerk sealed in a separate envelope one for each precinct, and delivered, after the consolidation and declaration of the result by the commission, with the ballots and ballot-boxes, to the ordinary of Ware County, and filed by him. That on the night of the election the managers at the city hall precinct, upon counting the votes cast, found a discrepancy or shortage of four votes in the tickets or ballots, in other words, they had on their tally-sheet 666 votes tallied, but only 662 ballots. They counted these votes several times in an effort to discover where the discrepancy existed, and were never able to find it. Having failed to find it, they discarded or refused to count these four votes or tickets that seemed to be missing, and simply reported a total vote of 662, which vote was four short on the tally-sheet, and that upon recount on November 20th, made by Mr. Paschall, Mr. Steffens, and Mr. Sirmans, the vote for that precinct appeared to be 518 for and 148 against increased taxation, making a total of 666, which tallied exactly with the tally-sheet that was made by the managers on the day of the election."

The trial judge made an order declining to make the mandamus absolute, and the plaintiffs excepted.

*Dickerson & Kelly* and *E. K. Wilcox,* for plaintiffs.

*Parks, Reed & Garrett, Blalock & Blalock,* and *Parker & Parker,* for defendant.

HILL, J. (After stating the foregoing facts.) The legislature in 1923 (Acts 1923, p. 837), passed an act limiting the rate of taxation in the City of Waycross for school purposes at ten mills

instead of six mills, as provided in the act of October 2, 1887, as amended. Section 3 of the act of 1923 provides: "Be it further enacted by the authority aforesaid, that this act shall be submitted to the qualified voters of the City of Waycross for their approval, for which purpose the city commission of the City of Waycross shall order a special election to be held on some date to be designated by said commission in a resolution or ordinance of the commission of the City of Waycross, which said resolution or ordinance shall set forth the rate of taxation now in force and the rate of the proposed increase, the date of the proposed election, and the rules and regulations governing same and the qualification of voters. Notice of such election shall be published in a newspaper in said City of Waycross at least once a week for two weeks before the election. At said election those in favor of the approval of this act shall have written or printed on their tickets: 'for increased taxation for public school purposes,' and those against this act and of the approval of same shall have written or printed on their tickets: 'against increased taxation for public school purposes.' The managers of said special election shall make return to the commission of the City of Waycross, whose duty it shall be, at their first regular meeting thereafter, to open the same, to declare the result, and record the same in the book of their proceedings; and if two thirds of those voting at said election, as provided in the constitution of Georgia, shall be in favor of the increased taxation, then this act shall become operative, and said commission of the City of Waycross and the board of education of the City of Waycross shall proceed to carry out their respective duties under the same. Should this act as amended fail of adoption, said commission of the City of Waycross shall submit the same to another election after the lapse of twelve months from the first election." In pursuance of the authority conferred by the above act the city commission at a regular meeting adopted a resolution ordering a special election to be held November 7, 1923, for the purpose of determining whether or not the rate of taxation for public-school purposes should be increased to ten mills as fixed by the act, at which time the election was held. The facts show that the commission ordered a recount of the ballots before the result of the election was declared, and that the recount changed the result from being against increased taxation to being in favor of in-

creased taxation. Certain citizens and taxpayers, being dissatisfied with the result as declared by the city commission, filed a petition for mandamus against the city commission to compel them to declare the result of the election to be against increased taxation, in accordance with the returns made by the managers of the election. A mandamus nisi having been issued, the trial judge on the hearing entered a judgment denying the prayers of the petition, and refused to make the mandamus absolute. To this judgment the plaintiffs excepted.

1. We are of the opinion that the city commission was without authority to permit a recount of the ballots cast at said election and to declare the result to be different from what it appeared to be on the face of the returns. The charter of the City of Waycross (Acts 1909, p. 1456, sec. 9), declares: "that the elections for mayor and aldermen of said city, as well as any and all other municipal elections held in said city, shall be held under the same rules and regulations as nearly as practicable as elections for members of the General Assembly. The mayor and aldermen of said city shall have the right and power to appoint for each election precinct in said city any three freeholders, or any two freeholders and a justice of the peace, who are residents of the said city, and not candidates or directly interested in the result thereof, to conduct such elections. . . Said managers shall hold such elections under the usual rules and regulations governing such matters, and shall count the votes; and when the votes are all counted out, the managers at each voting precinct shall sign a certificate, stating the number of votes each person, or each side of the question, voted for, as the case may be, received at such precinct, and each list of voters and each tally-sheet at each precinct must likewise be signed by the managers at such precinct. Said certificate together with one tally-sheet and one list of voters from each precinct shall be securely sealed in an envelope, one for each precinct, with the names of the managers endorsed thereon, respectively, and then delivered to the clerk of the city council, who shall keep same safely and return them to the next meeting (either called or regular) of the mayor and aldermen, who shall receive and open said returns and declare the result of the election by formal resolution, which shall be entered upon the minutes of the city council. One list of voters, one tally-sheet, and all the ballots at each pre-

cinct shall be sealed by the managers, with their names endorsed on the package respectively, and returned by them to the ordinary of said County of Ware; and all contests growing out of said election or concerning the same shall be before said ordinary of the county, and heard and determined by him as in other cases of contest, under the general rules and laws governing such matters, and no such contest shall be allowed or heard by him unless begun within five days after the election." The charter of the City of Waycross was amended in 1922 (Acts 1922, p. 1087), by the creation of a commission form of government and a city manager, but that act did not change the charter with respect to elections.

We are of the opinion that under the charter of the City of Waycross, providing how elections shall be held, the ballots in the instant case should have been sent by the managers of the election to the ordinary of the County of Ware; and that the city commission had no authority to permit or order a recount of the ballots, and that their duty was, at their first regular meeting after the election, to open the returns which the managers of the special election should make to the city commission, declare the result, and record the same in the book of their proceedings; and that the city commission exceeded their authority when they permitted a recount of the ballots. The fact that the recount may have been fair and honestly made does not answer the proposition that they had no authority to permit it to be done at all. To allow such a procedure without charter authority would be to open the door to frauds hereafter, if such a precedent is established. But it is argued that the recount was made by the election managers, and that they had the right to make the recount. The record shows that the recount was not made entirely by the managers of the election, but by the managers and others who were called in to aid in the recount, the latter not being sworn as managers, or in any other way. Besides, we are of the opinion that when the election managers had certified the result of the election and made their returns to the city commission, their duty was at an end and functus officio. In 20 C. J. 197, § 249, it is said: "Where election officers have completed the count, executed and delivered their returns, their powers and duties are at an end; they are without power to withdraw the returns, add to, change, or alter them, or to make a new return." And see 9 R. C. L. 1110, §§ 114, 115.

2.   Is mandamus an available remedy in a case like the present? The Civil Code (1910), § 5440, provides that "All official duties shall be faithfully fulfilled; and whenever, from any cause, a defect of legal justice would ensue from a failure or improper fulfillment, the writ of mandamus may issue to compel a due performance, if there be no other specific legal remedy for the legal rights." From the petition in this case and the agreed statement of facts we are of the opinion that there was a "failure or improper fulfillment" of official duty, and that the citizens and taxpayers who bring this complaint have no other specific legal remedy.   Neither the charter of the City of Waycross nor the act of August 14, 1923, a part of which is quoted in the first division of this opinion, authorizes the city commission to keep or have access to the ballots of any election held in the City of Waycross.   Under the law the ballots were to be turned over to the ordinary of the county, and the city commission were not authorized to look to anything in declaring the result of the election but the certificate of the election managers and the voters' list and tally-sheet which accompanied them.   There is no authority given, so far as we have been able to find, to any one to enter the ballot-box, except in the case of contest; and therefore we are of the opinion that it was an unlawful act on the part of the managers of the election when they placed the ballot-boxes with the city clerk instead of with the ordinary of the county, as the law provides; and we are likewise of the opinion that when the city commission permitted some of the managers of the election, and others, to go into the ballot-boxes and take out the ballots and recount them, they exceeded their authority.

It is insisted that while it is alleged in the petition that two thirds of those voting in the election did not vote for increased taxation, yet there is no evidence in the case to support that allegation, and that the evidence shows that the number of votes cast in the election for and against increased taxation was correctly shown by the recount.   The reply to this is that the agreed statement of facts shows that on the face of the returns the vote for increased taxation was 1257, and the vote against increased taxation was 636, and that the vote in favor of increased taxation was less than two thirds of the total vote cast.   It will not do to say that the evidence on the *recount* is the evidence that must control.

The figures as they stood before a recount must control. The city commission had but one duty to perform, and that was, in the absence of a contest, to declare the result of the election as it appeared from the managers' certificate. It was their plain and manifest duty to so declare the result; and having failed to do so, the writ of mandamus is an available remedy to require them to do so. We are therefore of the opinion that the trial judge erred in not making the mandamus absolute.

<em>Judgment reversed. All the Justices concur.</em>