## BACON *v.* BLACK *et al.*

1. Under the provisions of section 82, par. 9, of the Civil Code of 1910, superintendents of election have neither power nor authority to examine or recount ballots cast in a county election for the purpose of correcting errors, whether the same be due to mistake or fraud. The sole duty of the consolidating superintendents or managers is to consolidate the results as disclosed by the returns from the several election districts of the county as the same are signed and returned by the managers thereof, and to make, subscribe, and forward as prescribed therein the certificates mentioned in said paragraph and in paragraph 10. Consequently the court erred in overruling a demurrer to the answer of the defendants pleading the right of the superintendents of an election for county officers to investigate the ballots and recount the votes cast in an election for sheriff.

2. The error of the court in ruling upon the demurrer rendered the further proceedings in the trial nugatory, and consequently the errors assigned in the ruling upon the motion for a new trial will not be considered.

No. 5094. MAY 13, 1926.

Equitable petition. Before Judge Sheppard. Tattnall superior court. September 2, 1925.

On November 6, 1924, E. H. Bacon Jr. filed an action in Tattnall superior court against R. V. Black, J. Beasley, W. H. Cowart, M. L. Jones, A. T. Danner, L. E. Lynn, L. Williams, W. T. McArthur, W. M. Waters, T. J. Odum, and Lee Jones, as election managers and consolidators of the County of Tattnall at and for the general election held in and for Tattnall County on November 4, 1924, at which election said Bacon alleged he was a candidate against J. Henry Kennedy for the office of sheriff of said county. It was alleged that the plaintiff was the successful candidate in said election, having received 1066 votes and Kennedy having received 1063 votes, and plaintiff was therefore en-

titled to said office; that R. V. Black and the other defendants named were undertaking to recount the ballots cast in said election as to the office of sheriff, in violation of law; that the defendants have no authority to open, recount, or examine the ballots of any precinct in the county, "subsection 12 of section 82 of the Code of 1910 declaring that 'The ballots shall not be examined by the superintendents or the bystanders, but shall be carefully sealed in a strong envelope . . and delivered to the clerk of the superior court, by whom they shall be kept.' " Plaintiff prayed for the writ of injunction to prevent the counting of said ballots by the board of consolidators, and for the writ of mandamus to compel said consolidators to declare plaintiff elected sheriff of said county as shown by the returns of the election furnished and certified by the election managers of the various election precincts of said county. On November 6, 1924, the judge of the superior court passed an order temporarily restraining the defendants from opening, examining, or counting said ballots cast in said election, and issued a rule nisi directing the defendants to show cause why a mandamus absolute should not be granted. When the case was called for trial on November 15, 1924, the plaintiff filed an amendment, which was allowed, in which he added all of the election managers in the various precincts of the county as parties defendant.

The hearing was continued until November 26, 1924. On said day the defendants filed an answer in which they set up that the returns from the various election precincts in said county were never consolidated, "but admit that it might be true that upon the face of the returns as handed in to the managers of said election, who constituted the board of consolidators, the said E. H. Bacon Jr. had received 1066 votes and the said J. Henry Kennedy had received 1063 votes." The defendants further set up substantially the following. On the day after the election certain managers from each of the various election precincts met at the county-site, where they organized themselves into a board of consolidators for the purpose of receiving the returns and consolidating the votes cast at said election and declaring the result thereof. Before said returns were consolidated friends of Kennedy, who were voters, appeared before said board and made charges that the return of the election held at the 40th precinct of said county was

not a true return of the votes actually cast for Kennedy, but that Kenndy had received many more votes at said precinct than was shown by the return and that said Bacon had received less votes than shown by said return, and that said return as made was fraudulent and untrue; and they objected to the receiving and counting of the return from said precinct. After discussing the matter among themselves, and after receiving the advice of the county attorney that the board had the right to recount the ballots cast at the different election precincts in order to ascertain whether said returns were correctly made, the board decided, by resolution adopted by a vote of six to four, to proceed to recount all the ballots cast for the candidates for the office of sheriff at all of the election precincts in said county. Thereupon the board proceeded to recount the ballots cast at the 40th precinct for the office of sheriff only, which recount showed that instead of 49 votes cast for Kennedy at said election, as shown by the official return from said precinct, there were 61 votes cast for him, and instead of 160 votes being cast for Bacon, as shown by the official return, Bacon received only 120 votes as shown by the recount. Before the board could proceed to count the ballots cast for candidates for sheriff at the other precincts in the county, the members thereof were served with a temporary restraining order issued by the court, forbidding them to do so. The above matters occurred before the board had counted or consolidated the returns made from the various precincts and before any announcement or declaration was made by the board of consolidators of the result of the election for sheriff, and while said board was still in possession of all of said returns and the ballots cast at said election and in the performance of their official duties.

The plaintiff filed a demurrer to the answer, on the ground that it sets forth no legal defense and affords no reason why the prayers of the plaintiff should not be granted; and because the defendants seek to plead a violation of the law as a defense. The trial judge overruled the demurrer, and the plaintiff preserved exceptions pendente lite, which are incorporated in the bill of exceptions. At the trial "it was admitted by the defendants that the election returns of all districts in the county show on their face that E. H. Bacon Jr. was elected by a majority of three votes, and that in the Tyson (40th) district Bacon received 160 votes

on the face of the returns, and Kennedy received 29 votes on the face of the returns." The plaintiff introduced evidence to show the regularity of the return from the 40th district precinct, and also evidence from which the inference could be drawn that some one had molested the ballot-box after the ballots had been counted, as well as evidence by the manager of the election at said precinct as to the circumstances of the loss of the ballots after they had been counted by the consolidators. The defendants introduced evidence in support of their answer. The jury returned a verdict finding in favor of an injunction as prayed, but against the issuance of a mandamus absolute. The plaintiff filed a motion for a new trial, based upon the three general grounds, which was overruled by the trial judge, and the exception to this judgment is the second assignment of error presented in the bill of exceptions.

*M. Price, C. L. Cowart, W. M. Smiley,* and *P. M. Anderson,* for plaintiff. *A. S. Way* and *H. H. Elders,* for defendants.

RUSSELL, C. J. (After stating the foregoing facts.)

1. The petition in this case contained two prayers, the one for injunction to restrain the consolidating superintendents of the election from recounting the ballots cast by the voters in said election, and the other for mandamus directing the consolidating superintendents to declare the result of the election. Upon the trial of the case before a jury a permanent injunction was granted, but the mandamus was refused. For the reason which will hereinafter appear, no ruling will be in order at this time as to the mandamus or as to the merit of the judgment overruling the motion for a new trial, which in effect complains merely that the trial judge should have granted a new trial because the jury found against the grant of a mandamus and accordingly a mandamus absolute was not issued. The first question arising in the case was presented by the demurrer of the petitioner for injunction to the answer of the defendants. This answer in various paragraphs set up specifically the general contention that when fraud or mistake is brought to the attention of the consolidating superintendents of election returns of the county, they have the right, while the ballots are in their possession, to examine the same, ascertain if the precinct return corresponds with the ballots, if necessary recount the ballots, and correct either fraudulent errors or mistakes,

should such be discovered. The plaintiff, by demurrer to the answer of the defendants, insisted that when mere addition of the precinct returns showed Bacon to be elected it was the duty of the superintendents who consolidated the vote of the county to declare this to be the result of the election, regardless of any knowledge of fraud upon their part or of any charges of irregularity or fraud. In other words, the plaintiff insisted that these superintendents to consolidate the vote of the county have no power in any event to examine the ballots or to alter the result reached and returned by the managers of election at the several precincts of the county, and that such power is accorded only to the tribunal provided by law for the hearing of a contest *after* the returns have been consolidated and the results declared. The learned counsel for defendants produces several strong arguments in support of the position that fraud in elections should be open to attack at any stage, even the earliest, and well says that the discovery of the true facts with relation to election irregularities would in no way affect or minimize the subsequent right of contest as now provided by law.

However, we feel constrained by the weight of authority to hold that the superintendents who consolidate the vote of a county in county elections have no right to adjudicate upon the subject of irregularity or fraud which will permit them to examine the ballots and review the returns of the district managers in order to ascertain whether the district returns are in fact correct or incorrect. The duties of the managers or superintendents of election who are required by law to assemble at the court-house and consolidate the vote of the county are purely ministerial. The determination of the judicial question affecting the result in such county elections is confined to the remedy of contest as provided by law. The manner of conducting county elections by the superintendents thereof is prescribed in section 82 of the Civil Code. The powers and duties of the board of consolidating superintendents are prescribed in paragraphs 9, 10, 11, and 12 of the same section. By paragraph 7 of said section it is provided that "When the votes are all counted out there must be a certificate, signed by all the superintendents, stating the number of votes each person voted for received; and each list of voters and tally-sheet must have placed thereon the signature of the superintendents." By paragraph 8 of said section it is provided: "The superintendents

of the precincts must send their certificates, and all other papers of the election, including the ballots, under the seal, to the county-site for consolidation." By paragraph 9 the consolidating super-intendents are required to make and subscribe two certificates, stating the whole number of votes each person received in the county; one of them, together with one list of voters and one tally-sheet from each place of holding the election, shall be sealed up and without delay mailed to the Governor; and the other, with like accompaniments, shall be directed to the clerk of the superior court of the county, and by him deposited in his office. By paragraph 11 of this section it is declared: "If any voter shall vote who has not paid his taxes, and been registered, his vote shall be illegal, and the commissioners who consolidate their returns of the election shall not count such votes in making out the returns." By this provision the board of consolidating superintendents must ascertain the number of votes cast for each candidate from the certificates returned by the election managers of each district. They can not go behind these returns, except in the instance specified, that is, where votes have been cast by persons who have not paid their taxes. But even in such cases, it was held in *Kemp* v. *Ventulett,* 58 *Ga.* 419, that this duty was merely directory, and that if any candidate was injured his remedy was by contest, and not by bill in equity. In declaring the result of the election the consolidation managers are governed by the returns made by the superintendents of the several local precincts as to the number of votes cast, and for whom cast; and if these returns be in due form, they have no power to go behind them and ascertain the qualification of the voters, except in the instance specified, or otherwise inquire into the irregularity of the election. Their duty is simply to count the votes of the several precincts, as the same are shown in the certified returns, and declare the result. They have no power to count the ballots themselves. 20 C. J. 200, § 255. *Hopkins* v. *Waycross,* 160 *Ga.* 217 (127 S. E. 862).

The consolidating superintendents had no right to undertake the recount of all the votes cast in the various precincts, nor even in the single precinct of the 40th militia district. For this reason we are of the opinion that the trial judge erred in refusing to sustain the demurrer, and in not striking so much of the answer of the defendants as set up their right to investigate and recount the

ballots. The ruling upon this point being controlling in its character, the remaining proceedings of the trial became nugatory; and for that reason the exception to the denial of the mandamus as presented by the motion for a new trial in the lower court is not at this time presented for our consideration.

*Judgment reversed. All the Justices concur.*